Present: Carrico, C.J., Compton, Stephenson, Lacy, Keenan, and
Koontz, JJ., and Whiting, Senior Justice

STUARTS DRAFT SHOPPING CENTER, L.P.
                                        OPINION BY
v.  Record No. 951364          SENIOR JUSTICE HENRY H. WHITING
                                        April 19, 1996
S-D ASSOCIATES

                FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
                        Thomas H. Wood, Judge


     The primary issues in this appeal involve an alleged breach
of warranty in the sale of a shopping center and, if the warranty
was violated, a claimed waiver of that breach.  Conforming to
well-settled appellate principles, we state the few disputed
facts in the light most favorable to the seller, who prevailed
before the jury.

     In June 1988, Stuarts Draft Shopping Center, L.P., a limited
partnership (the buyer), contracted to buy Windmill Square
Shopping Center and an adjacent, unimproved parcel of land in
Stuarts Draft for $3,125,000 from S-D Associates, a general
partnership (the seller).  An exhibit, attached to the contract
of sale, indicated the amounts required to be paid by the tenants
of the shopping center under their written leases.  The contract
of sale required that at closing, the seller would deliver to the
buyer certificates from each tenant indicating that there were
"no concessions [or] rental abatements."  Nevertheless, prior to
the closing, the seller made oral agreements with three of its
ten tenants to defer payment of part of the required monthly
rents because these tenants were not generating sufficient sales
volumes in this recently constructed shopping center to pay the
full monthly rents.

According to the buyer, a capitalization of the required rents was the method by which it ascertained the value of this shopping center, and the seller recognized that this method "plays a large part" in determining the fair market value of commercial property. The seller's assignment of the leases, delivered at the closing, provided in pertinent part:

> 2. [Seller] represents and warrants . . . that the Leases have not been modified, amended, altered or supplemented in any manner, written or oral.

About eight days before the April 18, 1989 closing, the buyer was advised that the three tenants were paying the amounts required of them in the first year of their leases (the base rents), but were not paying the increased amounts required of them in the succeeding years of their leases. Further, a copy of a rent roll the seller furnished to the buyer at closing showed that these tenants were not even paying the full amounts of the base rents. Charles L. Hall and Diana L. Hall were paying $500 of a required $875, Robert J. Grove and Robin K. Grove were paying $817 of a required $934, and Robert G. Killingsworth was paying $700 of a required $934.

After the closing, the Halls continued to pay the reduced monthly rent, asserting that the seller had agreed to this reduction in May or June preceding the closing. In support of that contention, they produced a letter from Paul H. Coffey, Jr., an agent of the seller, stating that the seller

> agreed to reduce your rent for six (6) months until sales improved. At the end of this period we would review your situation and decide where we would go from

that point.

> At no time did [the seller] agree to forego the
> lease or any rights of the landlord under the lease.

Since the seller had taken no action to increase the reduced monthly rent either at the end of the six months period or later, the Halls continued to pay the reduced amount to the buyer. Before suing the Halls for the arrearages that had accrued to it after the closing, the buyer notified the seller that the seller's agreement with the Halls was a modification of the lease and, therefore, a breach of the warranty for which the buyer would demand indemnification. The buyer later settled its claim against the Halls for part of their alleged arrearages.

When the buyer demanded the rent due under the lease from Killingsworth, that tenant also advised the buyer of the seller's agreement to defer payment of part of his monthly rent payments. Some months after the closing, Killingsworth agreed to pay, and did pay, the rent required under his lease as well as the arrearages that accrued after the closing. Later, the buyer reduced Killingsworth's rent upon his agreement to extend the lease for an additional period following its original term.

Without objection from the seller, the Groves paid only the rent required in the first year of their lease, and not the required increases in the second and third years of their lease, partly because Mr. Grove was "local" and "kept an eye on the [shopping] center." The buyer made no demand of the Groves to increase their rent for the balance of the lease, which expired

in February 1990.

Despite the buyer's prior notice of a claim for indemnification, and its offset of other claims against the seller in periodic payments of interest on a $140,000 purchase money note, the buyer made no claim for a reduction of the purchase price until January 23, 1992. At that time, the buyer filed a two-count motion for judgment against the seller claiming damages arising from the seller's alleged fraud and breach of warranty in misrepresenting that the leases had not been modified by the reduction of the rents stated therein. In September 1992, the seller sued the buyer on its note and the buyer filed defenses of breach of warranty and fraud.

After the court sustained the seller's plea of the statute of limitations to the fraud count, it consolidated the buyer's breach of warranty count for trial with the seller's action on the note. The buyer unsuccessfully moved for judgment in its favor on the breach of warranty count pretrial, at the close of evidence, and following a jury's verdict returned against the buyer and for the seller. In these motions, the buyer contended that the evidence disclosed as a matter of law that the seller had breached its warranty and that the buyer had no duty to investigate the truth of the warranty. The buyer appeals the judgment entered on the verdict.

BUYER'S BREACH OF WARRANTY CLAIM

On appeal, the buyer again asserts that the evidence

establishes the seller's breach of warranty as a matter of law.[1] The seller admits that it had agreed to the temporary reductions of the monthly rents. Nevertheless, it contends that these agreements did not breach its warranty by modifying the leases since the agreements were merely deferrals which did not affect the lessees' liability for the resulting arrearages or for future payment of the full rents specified in the leases.

In support of this contention, the seller argues that the language relating to the modification of the leases was "unclear and ambiguous," thereby creating an issue for the jury. However, the seller does not indicate in what manner this language "admits of being understood in more than one way or refers to two or more things simultaneously . . . [or] is difficult to comprehend, is of doubtful import, or lacks clearness and definiteness," the indispensable elements of ambiguous language. Brown v. Lukhard,

---

[1]We reject the seller's suggestion that the buyer's failure to object to jury instructions on the breach-of-warranty issue made it a jury question. The buyer's several motions made before, during, and after the trial clearly preserved this issue for appeal. See Code § 8.01-384. Thus, under the circumstances of this case, the buyer need not have stated those objections again when the jury instructions were discussed or given. See Wright v. Norfolk & W. Ry. Co., 245 Va. 160, 168-70, 427 S.E.2d 724, 727-29 (1993).

229 Va. 316, 321, 330 S.E.2d 84, 87 (1985) (citations omitted). On brief, the seller merely states that "[t]he parties could not agree as to the meaning of the warranty under the circumstances. Paul Coffey testified that the warranty meant that the leases were to be enforceable as written, [that] there was no legal defense."

However, mere disagreement about the meaning of otherwise unambiguous language does not make it ambiguous. <u>Appalachian Power Co. v. Greater Lynchburg Transit Co.</u>, 236 Va. 292, 295, 374 S.E.2d 10, 12 (1988). And we conclude that the seller's "represent[ation] and warrant[y] . . . that the Leases have not been <u>modified</u>, amended, altered or supplemented <u>in any manner, written or oral</u>," clearly and unambiguously embraces the seller's agreements to defer part of the monthly rent payments. (Emphasis added.) Even though not releasing the tenants from ultimate liability for the resulting arrearages or resumption of the full rent payments required in their leases, these modifications of the tenants' required performance of their leases were clearly within the scope of the seller's warranty.

Accordingly, we apply the well-established rule that when a contract is clear and unambiguous, the court, not the jury, should decide the meaning of the disputed language. <u>D.C. McClain, Inc. v. Arlington County</u>, 249 Va. 131, 135, 452 S.E.2d 659, 662 (1995). And in doing so in this case, the court should have given effect to the clear and unambiguous language as

written.  <u>Moore v. State Farm Mut. Auto. Ins. Co.</u>, 248 Va. 432, 434-35, 448 S.E.2d 611, 613 (1994).  Applying this rule, we hold that the seller's admitted rent concessions were modifications of the leases and, therefore, breaches of its warranty.

Next, the seller contends that the jury could have considered the breach of warranty to be immaterial.  However, the seller recognized that rent capitalization of commercial property, such as its shopping center, plays "the biggest part" in fixing its value.  Given the buyer's uncontradicted testimony that it relied upon these figures in fixing the value of the shopping center, we conclude that the materiality of the breach was shown as a matter of law.  Therefore, the court erred in submitting the issues of the seller's breach of warranty and its materiality to the jury.

Even so, the seller contends that the jury could have found the buyer was not damaged by the seller's breach of warranty.  According to the seller, "[i]f the three tenants paid according to their lease . . . , or if [the buyer] got the equivalent, or . . . changed a lease after closing, then the jury could reasonably find no basis for damage."  We need not consider this contention because "[i]f an issue is erroneously submitted to a jury, we presume that the jury decided the case upon that issue."  <u>Clohessy v. Weiler</u>, 250 Va. 249, 254, 462 S.E.2d 94, 98 (1995).

SELLER'S CLAIM OF BUYER'S WAIVER OF BREACH OF WARRANTY

The buyer claims that the evidence was insufficient to

establish its alleged waiver of the seller's breach of warranty. The seller responds that we cannot consider this claim since the buyer did not object to the jury instructions on that issue. In a letter written to the court five days before trial, with a copy to seller's counsel, buyer's counsel contended that waiver was not a jury issue. Additionally, in its pretrial motion for summary judgment, the buyer noted that a failure to investigate the truth of a warranty is no defense to an action predicated on that breach. Therefore, the objection need not have been repeated when the issue was submitted to the jury. Code § 8.01-384.[2] Thus, we turn to the merits of this issue.

In the trial court and on appeal, the buyer cites <u>Stanley's Cafeteria v. Abramson</u>, 226 Va. 68, 74, 306 S.E.2d 870, 873 (1983), in which we held that a party claiming waiver has the burden of showing the two essential elements of waiver, namely "knowledge of the facts basic to the exercise of the right

---

[2]We need not consider the buyer's reliance upon <u>Boykin v. Hermitage Realty</u>, 234 Va. 26, 30, 360 S.E.2d 177, 179 (1987), and the buyer's argument that its failure to investigate the seller's records could not affect its claim of fraud as a defense to payment of the note. We find no record of any such contention in the trial court, nor did the buyer object to the introduction of evidence relating to the seller's defense of <u>caveat</u> <u>emptor</u> to the buyer's fraud claim. Rule 5:25.

[waived] and <u>the intent to relinquish that right</u>." <u>Id.</u> (quoting <u>Employers Ins. Co. v. Great American</u>, 214 Va. 410, 412-13, 200 S.E.2d 560, 562 (1973)) (emphasis added). These elements must be shown by "clear, precise and unequivocal evidence." 226 Va. at 74, 306 S.E.2d at 873 (quoting <u>Utica Mutual v. National Indemnity</u>, 210 Va. 769, 773, 173 S.E.2d 855, 858 (1970)). The buyer argues that the seller failed to carry this burden.

Although the evidence is sufficient to support a finding that the buyer had knowledge of the rent reductions at the time of closing, the seller recognizes that this knowledge and the buyer's failure to protest or object to the breach are insufficient to show that the buyer intended to relinquish its right to sue the seller for its breach of warranty. However, the seller contends that this intent is shown in (1) the buyer's settlement of its claim against the Halls, (2) its failure to "set-off the lost rents against the interest on the note, despite use of set-off for other claims," and (3) its delay in asserting its present claim. We disagree.

Again, we point out that the buyer's claims against the Halls and the other tenants who had not paid the required rents were based on the tenants' liability under the leases. Here, the buyer's claim against the seller is based on the seller's warranty and the consequent loss of value of the property because of the seller's breach of that warranty. Therefore, the buyer's dealings with those tenants did not affect its claim against the

-9-

seller.

And although the buyer may have delayed in asserting its breach of warranty claim, either by way of offset or by filing its action, the seller cites no cases, and we have found none, in which we have held that any such delay evinces an intentional relinquishment of the buyer's rights. Indeed, we held in Stanley's Cafeteria that although a delay in enforcing a contractual right may show passive acquiescence in a partial performance, that alone does not establish an intent to relinquish the right to full performance. 226 Va. at 75, 306 S.E.2d at 874.

Perceiving no essential difference between the principles of waiver applicable to a partial performance of a contract and those applicable to its breach, we hold that the buyer's mere delay in asserting its right did not evince an intent to relinquish that right. Accordingly, we conclude that the court also erred in submitting the issue of waiver to the jury.

In view of these rulings, we need consider only those assignments of error regarding the court's failure to grant two instructions which might be tendered in a new trial. The buyer's proposed Instruction 29 reads in pertinent part, "[t]he measure of the purchaser's damages is the value of the property at the time the contract was broken minus the contract price." The buyer recognizes that Instruction G, which was granted, could have covered these claims. As pertinent, it states that the

buyer could "recover as damages all the losses [it] sustained including gains prevented which are a direct and natural result of the breach [of warranty]."  However, given the seller's argument, made before the jury and throughout this case, that the buyer's damages could only be its loss of rents, we think the jury should have been instructed regarding the buyer's loss in the value of the property.  Accordingly, if the evidence and contentions are similar on retrial, the theory encompassed in Instruction 29 should be covered in an appropriate instruction.

Proposed Instruction 28 defined constructive fraud. According to the buyer, the jury should have been given this instruction since it may have concluded that the seller's "failure to provide correct rent amounts to [the buyer] was simply a mistake by its real estate agent."  We agree with the seller that there was no evidence presented of innocent or mistaken misrepresentation; the evidence was confined to that of the seller's knowing misrepresentation of the rents.  Therefore, we conclude that the instruction was properly refused.

In summary, we will reverse the judgment of the court because of its error in submitting the issues of breach of warranty and waiver to the jury.  We will remand the case for a new trial in conformity with this opinion.

<u>Reversed and remanded.</u>