[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT #119
CT Page 8240
The defendants move for summary judgment on the ground that plaintiff Fitzpatrick released and discharged defendant Emhart from all contracts arising from or related to the employment relationship.
The plaintiffs, Donald W. Fitzpatrick (Fitzpatrick) and Steven Bills, filed a two-count second amended complaint on August 8, 1995, against the defendants, Emhart Corporation (Emhart), B D, Inc. and The Black Decker Corporation (Black 
Decker). In count one, the plaintiffs allege that they were denied the right to exercise their outstanding stock options that became exercisable as a result of a change in control. In count two, the plaintiffs allege that the officers and directors of Emhart breached a fiduciary duty owed to the plaintiffs.
On December 4, 1995, the defendants filed their amended answer, special defenses and counterclaim to the plaintiffs' second amended complaint. Thereafter, on January 3, 1996, the defendants filed a motion for summary judgment as to Fitzpatrick's claims on the ground that Fitzpatrick released and discharged his employer from all contracts related to or arising from the employment relationship. In support of their motion, the defendants filed a memorandum of law, an affidavit, a copy of the 1986 Stock Option Plan and a copy of the termination agreement between Fitzpatrick and Advanced Technology, Inc. of Delaware (ATI). On February 20, 1996, Fitzpatrick filed a memorandum in opposition, an accompanying affidavit, a copy of the December 22, 1988 change in control amendment adopted by Emhart's board of directors and a copy of United States District Court Judge Nevas' opinion in Lamb v. Emhart Corp., CV No. H-90-15 (AHN), April 7, 1994.[1]
The following facts are undisputed. Fitzpatrick was employed by ATI, which, at all times relevant, was a wholly-owned subsidiary of Emhart. In connection with his employment, Fitzpatrick entered into a stock option contract with Emhart, subject to the terms the 1986 Stock Option Plan (Plan). Fitzpatrick resigned his employment with ATI effective February 28, 1989.
The Plan provided for two relevant time provisions. Section 6 (b), states in pertinent part: CT Page 8241
 (b) Period of Option. The period of each option shall be fixed by the Committee but shall be for not more than ten (10) years from and including the date of grant, and no other provisions of this Plan, including those in subparagraphs (e) and (f) below, shall have the effect of extending such period.
Additionally, section 6(e) states in relevant part:
 (e) Termination of Employment. Upon termination of an option holder's employment, for any reason other than the death or deliberate, willful, or gross misconduct, his option shall be exercisable only to the extent he would have been permitted to purchase shares under his option at the date of such termination, and such option shall expire unless exercised within the three (3) month period following the date of such termination.
Defendants' counsel, James L. Fischer, in his affidavit, states that according to Emhart's records, the option was granted to Fitzpatrick on January 5, 1988. When fully vested and exercisable, the option would have allowed Fitzpatrick to purchase up to 2,098 shares of Emhart stock. Potential option rights became vested and exercisable in increments of 25% per year. As of February 21, 1989, 25% of the option share, or 524 shares, were vested and exercisable. Emhart's records further show that on February 21, Fitzpatrick submitted a form to Emhart exercising his option to purchase all 524 of his vested and exercisable shares.
The next day, February 22, Fitzpatrick executed a termination agreement (Agreement), effective February 28, 1989. Fitzpatrick states in his affidavit that the Agreement was typed and drafted by ATI and he was told that he had no choice but to sign the Agreement.
The release language in section 3 of the Agreement provided:
 Fitzpatrick and ATI mutually release and discharge one and the other from all contracts, agreements, claims, actions, demands, rights, benefits, and suits of every nature and description arising from, or related to, the employment relationship existing between Fitzpatrick and ATI as employee and employer prior to March 1, 1989. This release shall be binding upon and inure to the benefit of and be binding upon, the parties, their successors, assigns, and personal representatives, and without limiting the generality of the foregoing, the officers, directors, employees, agents and affiliates of CT Page 8242 ATI.
Section 9 of the Agreement further provided that it was the complete agreement of the parties, superseding any prior discussions, communications, representations or negotiations.
In Lamb v. Emhart Corp., supra, Judge Nevas examined Emhart's 1986 Stock Option Plan, which is the same plan at issue here. The court found the following facts regarding the background of the change in control amendment.
"[O]n December 22, 1988, Emhart's board of directors adopted a change of control amendment (Amendment) to the Plan which added the following provision.
 6(i) Effect of a Change in Control. Notwithstanding Subparagraphs (b) or (e) above, in the event of a Change in Control as hereinafter defined, all options outstanding on the date of such Change shall become immediately and fully exercisable."
Lamb v. Emhart Corp., supra, 17.
The Board also passed the following directive on December 22, 1988: "RESOLVED: That the Management Compensation Stock Option Committee shall amend the stock option agreements evidencing options outstanding under the 1986[1983] Stock Option Plan on the date such Amendment is adopted to reflect the terms of such amendment." Id., 17. Section 10 of the Plan required that stock option holders consent to any amendment to the Plan.[2]
Fitzpatrick states in his affidavit that he was not presented with a consent letter as required pursuant to section 10 of the Plan.
"On or about March 19, 1989 an agreement and plan of merger among the Black Decker Corporation, B D, Inc. and Emhart was executed. Section 2.09 of this agreement provided in pertinent part:
 Employee Stock Options. The Purchaser [B D, Inc] and the Company [Emhart] shall take all action necessary to (i) terminate each employee stock option plan of the company . . . (ii) provide that each option to purchase shares (Option) . . . granted under any employee stock option plan of the Company . . . which is outstanding on the date hereof, shall become fully exercisable and vested, whether or not previously exercisable or vested, on the date of the Purchaser's acquisition of shares pursuant to the offer, such holder shall be entitled to receive from the Company . . . an amount CT Page 8243 in cash in cancellation of such option."
Lamb v. Emhart Corp., supra, 34.
"Further, in its schedule 14D-9 filed with the [Securities and Exchange Commission], Emhart represented to that body that Emhart and B D, Inc. had agreed to provide that each Emhart stock option which was `outstanding' on the date of the merger would become fully exercisable and vested on the date of the change in control." (Emphasis in original.) Lamb v. Emhart Corp.,
supra, 34-35. On April 4, 1989 the Senior Vice-President of Emhart, Richard F. Vitkus, sent a memo (Vitkus Memo) addressed to Emhart Stock Option Holders advising them that:
 The merger agreement between Emhart and Black and Decker provides that immediately following Black and Decker's purchase of Emhart shares under the Tender Offer, all outstanding Emhart stock options, whether or not currently exercisable, will become fully exercisable and vested, and the option holders will be entitled to receive an amount of cash for each option share equal to the `spread' between the option exercise price and the Tender Offer price of $40 per share. Because all options are being cashed out in this manner, it will not be necessary to exercise your option."
(Emphasis in original.) Id., 35. Emhart did not send the Vitkus Memo to the plaintiffs. On April 28, 1989, Emhart and Black 
Decker consummated a merger, which constituted a change of control under the Amendment. It is based on this change in control that the plaintiffs allege their stock options became fully vested and exercisable.
"Practice Book § 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Citation omitted.) Doty v. Mucci, 238 Conn. 800,805, ___ A.2d ___ (1996). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Citation omitted.) Id. "The party seeking summary judgment has the burden of showing the absence of any genuine issue of material facts which, under applicable principles of substantive law, entitle him to judgment as a matter of law." (Citation omitted.) Id. "A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." (Citations omitted; CT Page 8244 internal quotation marks omitted.) Hammer v. Lumberman's MutualCasualty Co., 214 Conn. 573, 578, 573 A.2d 699 (1990). "The party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citation omitted.) Id.
The defendants argue that the stock option contract ceased to exist when Fitzpatrick released and discharged his stock option contract and all other prior contracts related to his employment at ATI pursuant to the Agreement. Fitzpatrick claims in opposition that the Agreement's application to unknown future rights is, at best, ambiguous, and that Fitzpatrick did not intend to waive his contractual rights.
The court notes that the parties present additional arguments concerning the applicability of the Agreement to the Plan between Fitzpatrick and Emhart, and the applicability of the Plan under the facts of this case. For purposes of this motion. because there remains a genuine issue of material fact as set forth below. The court assumes that the Agreement applies to the Plan and that the Plan applies to the facts of this case. See Lamb v.Emhart Corp., supra (holding that Plan, as amended, applied to former Emhart senior management employees terminated prior to the merger).
The Agreement provided that any disputes concerning the interpretation of the Agreement would be decided under Virginia law. Connecticut courts will give "effect to an express choice of law by the parties to a contract provided that it was made in good faith." (Citations omitted.) Elgar v. Elgar, 238 Conn. 839,848, A.2d (1996). Traditional contract principles apply to the construction and enforcement of releases. Fried v. Smith, 244 Va. 355,358-59, 421 S.E.2d 437, 438-39 (1992); see also Bialowans v.Minor, 209 Conn. 212, 217-18, 550 A.2d 637 (1988).
Under Virginia law, "where the writing on its face is ambiguous, vague, or indefinite . . . the proper construction of the contract is an issue for the trier of fact." Cascades NorthVenture LTD. v. PRC, Inc., 249 Va. 574, 457 S.E.2d 370, 373
(1995). Language is unclear and ambiguous if it is capable of "being understood in more than one way or refers to two or more things simultaneously . . . [or] is difficult to comprehend, is of doubtful import, or lacks clearness and definiteness." (Citation omitted.) Stuarts Draft Shopping Center. L.P. v. S-DAssociates, 251 Va. 483, 468 S.E.2d 885, 888 (1996). When the CT Page 8245 contract language is ambiguous, "the court should receive extrinsic evidence to ascertain the intention of the parties." (Citations omitted.) Cascades North Venture LTD. v. PRC, Inc.,
supra, 457 S.E.2d 373.
The defendants maintain that the language of the Agreement is clear and unambiguous, and that the Agreement terms specifying "all contracts . . . arising from, or related to, the employment relationship" encompass Fitzpatrick's preexisting stock option contract with Emhart and all rights deriving therefrom. In response, Fitzpatrick argues that the Agreement is ambiguous as to whether its terms apply to unknown future rights.
The language in the Agreement releasing "all contracts" is susceptible to more than one interpretation. For example, the Agreement may be interpreted to have released all rights, including future rights, or it may be interpreted to have released present, existing rights only. Because the language is capable of being understood in more than one way, the language is ambiguous. Stuarts Draft Shopping Center, L.P. v. S-D Associates, supra, 468 S.E.2d 888. Because the Agreement is ambiguous, its interpretation requires the consideration of extrinsic evidence to determine the intent of the parties. See Cascades NorthVenture LTD. v. PRC, Inc., supra. Because the parties did not provide the necessary extrinsic evidence, a genuine issue of material fact remains.
Furthermore, Fitzpatrick argues that he was not aware of the change in control amendment as of February 22 or 28, 1989. Thus, he argues that he did not intend to release unknown stock option rights that could accrue upon a change in control at the time he signed the Agreement. According to Fitzpatrick, Emhart did not disclose to him, as required by § 10 of the Plan, that the change in control amendment provided him important post-termination rights. The defendants argue that Fitzpatrick was that the Agreement applied to the Plan, as evidenced by the that Fitzpatrick exercised all his vested stock options the before he executed the Agreement.
"Waiver is the voluntary, intentional abandonment of a known legal right, advantage, or privilege." (Citation omitted.)Weidman v. Babcock, 241 Va. 40, 400 S.E.2d 164, 167 (1991). Essential elements of the doctrine are both "knowledge of the facts basic to the exercise of the right and the intent to relinquish that right." (Citations omitted.) Stuarts DraftShopping Center, L.P. v. S-D Associates, supra, 468 S.E.2d 889. CT Page 8246 "A waiver will not be implied if either element is lacking."Bergmueller v. Minnick, 238 Va. 332, 383 S.E.2d 722, 725 (1989). Furthermore, whether a party waived his rights is a question of fact. Advest, Inc. v. Wachtel, 235 Conn. 559, 569, 668 A.2d 367
(1995).
Fitzpatrick states in his affidavit that he did not intend to release his rights under the Plan. The defendants offered no evidence to controvert these assertions, which for the purpose of a motion for summary judgment are presumed true. Yanow v. TealIndustries, Inc., 178 Conn. 262, 265, 422 A.2d 311 (1979). Accordingly, there exists a genuine issue of material fact as to whether Fitzpatrick intended to waive his rights under the Plan.
Because a genuine issue of material fact exists as to whether the Agreement applied to unknown, future rights and whether plaintiff Fitzpatrick intended to waive his contractual rights, the motion for summary judgment is denied.
Mary R. Hennessey, Judge