COURT OF APPEALS OF VIRGINIA

Present: Judges Elder, Frank and Humphreys
Argued at Richmond, Virginia


JOSHUA LEE CROXTON

                                              MEMORANDUM OPINION[*] BY
v.      Record No. 0382-04-2           JUDGE ROBERT J. HUMPHREYS
                                                    APRIL 26, 2005
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
George F. Tidey, Judge

John W. Parsons (Law Office of Wood and Wood, P.C., on brief),
for appellant.

Donald E. Jeffrey, III, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


Joshua Lee Croxton ("Croxton") appeals his eight felony convictions, following a bench

trial, for aggravated sexual battery, in violation of Code § 18.2-67.3(A)(1), and taking indecent

liberties with a child, in violation of Code § 18.2-370.1. Croxton contends that the trial court

erred in: (1) admitting statements from a videotaped interview in which he admitted that he

possessed pornographic videotapes; (2) quashing a subpoena *duces tecum* that requested copies

of the victim's school records; and (3) finding the evidence sufficient to convict Croxton of these

offenses. For the reasons that follow, we affirm.

In accord with our usual standard of review, we view the evidence and all reasonable

inferences flowing from the evidence in the light most favorable to the Commonwealth, the party

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication. Moreover, as this opinion has no precedential value, we recite only those facts necessary to our holding.

prevailing below. Garcia v. Commonwealth, 40 Va. App. 184, 189, 578 S.E.2d 97, 99 (2003); Sabo v. Commonwealth, 38 Va. App. 63, 69, 561 S.E.2d 761, 764 (2002).

On June 1, 2002, Croxton married his wife, Sharon. Sharon and C.E., her six-year-old daughter from a former marriage, moved into an apartment with Croxton. At the time, Sharon was approximately two months pregnant with Croxton's child. Towards the end of 2002, Sharon began experiencing premature labor pains, and she was placed on bed rest. As a result, Croxton "picked up a lot of the household chores," including helping C.E. with her baths at night.

Croxton and C.E. were sometimes left alone together, often while Sharon went to the store to purchase cigarettes. While they were alone, Croxton would occasionally ask C.E. to watch "sex movies" with him. Croxton and C.E. would "sit[] and lay[]" on his bed while they watched the movies. The films contained "two boys and one girl" who were unclothed and had their "private parts" exposed. In the movies, the actors would "lick" each other's private parts. Croxton "touched" C.E. while the videos were playing.

Also, on several occasions, Croxton placed his "private part" into C.E.'s "private part" just "a little bit," or approximately two inches, until it was "hurtful." This happened "three or four" times in Croxton's bedroom, twice in C.E.'s bed, and once in C.E.'s closet. During each of these incidents, Croxton had an erection, and Croxton and C.E. both had their underwear pulled down to their knees. On at least one occasion, "white stuff" came out of Croxton's penis. Croxton told C.E. that the "white stuff" was "to make a baby."

On two or three other occasions, Croxton put his tongue on C.E.'s "private part" until it felt "funny." Croxton also taught C.E. to touch his penis with "two of her fingers in a circle" while "moving them back and forth." She masturbated him "more than twice," but he did not ejaculate. On one occasion, he offered her twenty dollars to put her mouth on his "private part," but she refused.

Also, one evening, Croxton, C.E., and Sharon were watching a movie that was not a "sex movie." All three of them were lying underneath the covers on Croxton's bed, and Croxton was positioned between C.E. and Sharon. Unbeknownst to Sharon, Croxton put his "finger" underneath C.E.'s underwear, on her "private," while they were watching the movie.

Croxton told C.E. not to tell anybody about what they were doing. Although C.E. did not tell Sharon about the abuse, she later discussed the incidents with two of her cousins. C.E.'s aunt then told Sharon that Croxton was sexually abusing C.E.

Croxton was subsequently indicted and convicted of four counts of aggravated sexual battery, in violation of Code § 18.2-67.3(A)(1), and four counts of taking indecent liberties with a child, in violation of Code § 18.2-370.1.[1]

On appeal, Croxton raises three separate assignments of error. First, Croxton contends that the trial court erred in admitting a videotaped interview into evidence, arguing that the statements in the interview are irrelevant and that, regardless, the probative value of the statements was outweighed by their potential for causing unfair prejudice. Second, Croxton argues that the court erred in sustaining the Commonwealth's motion to quash a subpoena for C.E.'s school records. Third, Croxton asserts that the evidence was insufficient to support his convictions, contending that C.E.'s testimony, in light of her "tendency to lie" about previous incidents of sexual abuse, was inherently incredible. For the reasons that follow, we affirm.

A. Admissibility of the Videotaped Interview

As part of the police investigation, Investigator M.D. Chodorov conducted a videotaped interview with Croxton. During the interview, Croxton denied C.E's allegations. When asked where C.E. would have obtained her knowledge about sex, Croxton said that he had found C.E.

---

[1] Croxton was also acquitted of two counts of forcible sodomy, in violation of Code § 18.2-67.1. Those charges are not at issue in this appeal.

standing behind him "two or three, maybe four times" while he was watching pornographic videos in the living room. Croxton also said that he had seen C.E. peeking into the bedroom while he was having sex with Sharon. Croxton told Chodorov that C.E. had asked him questions about oral sex and ejaculation, and he admitted to speaking with C.E. about semen and its role in human reproduction.

Croxton filed a pretrial motion *in limine*, seeking to exclude his videotaped statements. The trial court overruled Croxton's motion and admitted the videotaped interview into evidence. On appeal, Croxton argues that the trial court abused its discretion, reasoning that his statements, in which he admitted that he owned pornography, were both irrelevant and unfairly prejudicial. We disagree.

Generally, "[e]very fact, however remote or insignificant, that tends to establish the probability or improbability of a fact in issue, is factually relevant and admissible." Walker v. Commonwealth, 258 Va. 54, 68, 515 S.E.2d 565, 573 (1999); see also Ragland v. Commonwealth, 16 Va. App. 913, 918, 434 S.E.2d 675, 678 (1993). During the videotaped interview, Croxton admitted that he owned pornographic videos. One of the underlying allegations in this case focused on C.E.'s assertion that she watched "sex movies" with Croxton. Croxton's statement that he possessed pornographic videos is, therefore, relevant because it tends to corroborate C.E.'s allegation that she had watched pornography with Croxton and that Croxton had "taught" her to act like the individuals in the films. Cf. Quinones v. Commonwealth, 35 Va. App. 634, 643, 547 S.E.2d 524, 529 (2001) (holding that the trial court erred in admitting evidence that defendant owned pornographic videos where "[t]he record contain[ed] no evidence establishing a relationship between the videotapes and the charges on trial," such as evidence "that the videotapes displayed acts . . . similar to the acts [the defendant] allegedly performed on the victim," "that the tapes were ever shown to the victim or that she was

- 4 -

aware of their existence," or "that the videotapes played any part in the event described by the victim").

However, "[e]vidence that is factually relevant must nevertheless be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Walker, 258 Va. at 68, 515 S.E.2d at 573. "The responsibility for balancing the competing considerations of probative value and prejudice rests in the sound discretion of the trial court. The exercise of that discretion will not be disturbed on appeal in the absence of a clear abuse." Spencer v. Commonwealth, 240 Va. 78, 90, 393 S.E.2d 609, 617 (1990).

Croxton argues that the recorded statements "allowed the court to draw the prejudicial inference that Mr. Croxton was somebody who was fixated on pornography, and, therefore, capable of taking sexual liberties with his underage step-daughter." Croxton contends that this "prejudicial inference" outweighs "the probative value of the proof of the existence of such tapes in the house."[2]

Generally, "evidence of other independent acts of an accused is inadmissible if relevant only to show a probability that the accused committed the crime for which he is on trial because he is a person of bad or criminal character." Sutphin v. Commonwealth, 1 Va. App. 241, 245, 337 S.E.2d 897, 899 (1985). Here, Croxton's statements—in which he admitted to owning

---

[2] We also note that, during the Commonwealth's case-in-chief, both C.E. and a social worker testified that Croxton watched pornography with C.E. Croxton failed to object to that testimony. However, because the trial court had already ruled *in limine* that evidence relating to Croxton's possession of pornography would be admitted, and because Croxton objected to that pretrial ruling, his failure to continuously object to the introduction of the evidence does not constitute a waiver of this issue. See Code § 8.01-384 ("No party, after having made an objection . . . known to the court, shall be required to make such objection . . . again in order to preserve his right to appeal . . . a ruling, order, or action of the court."); see also Stuarts Draft Shopping Ctr., L.P. v. S-D Assocs., 251 Va. 483, 489, 468 S.E.2d 885, 889 (1996) (noting that, where the appellant made an objection in a pretrial motion and the motion was overruled, the objection need "not have been repeated" when the issue arose during trial in order to preserve the issue for appeal).

pornographic videos and watching those videos while a young child was in the house—may have led to the inference that he was a "bad" person. However, the fact that the videotaped interview paints Croxton in a less-than-flattering light does not automatically render his statements inadmissible. Rather, "if such evidence tends to prove any of the relevant facts of the offense charged and is otherwise admissible, it will not be excluded merely because it also shows [the accused] to be guilty of another crime." Williams v. Commonwealth, 203 Va. 837, 841, 127 S.E.2d 423, 426 (1962). And, as discussed above, Croxton's statements were relevant because they tended to prove that Croxton owned pornographic videos, thereby heightening the probability that C.E. was telling the truth when she testified that she had watched pornographic videos with Croxton.[3]

Moreover, this Court will not presume that a judge presiding over a bench trial considered evidence for an "improper purpose," absent evidence to the contrary. See Vanhook v. Commonwealth, 40 Va. App. 130, 135, 578 S.E.2d 71, 73 (2003); Cole v. Commonwealth, 16 Va. App. 113, 116, 428 S.E.2d 303, 305 (1993). Where, as here, the record is devoid of any indication that the trial court considered otherwise admissible evidence for a prejudicial purpose, we will not assume that the trial court abused its discretion when it admitted that evidence. Thus, we cannot conclude that the trial court abused its discretion when it determined that the probative value of Croxton's statements outweighed their potential prejudicial effect.

---

[3] In this respect, the present case is distinguishable from the circumstances presented in Blaylock v. Commonwealth, 26 Va. App. 579, 496 S.E.2d 97 (1998). In Blaylock, we held that the trial court abused its discretion in admitting child pornography discovered in the defendant's possession, reasoning that "the probative value of the child pornography evidence was clearly outweighed by its prejudicial effect." Id. at 592, 496 S.E.2d at 103. In Blaylock, however, the existence of the child pornography was only relevant on the issue of the accused's propensity to engage in criminal activity. There were no allegations that the accused reviewed pornographic materials with the victim or directed the victim to act like the individuals portrayed in the pictures.

B.  Quashing the Subpoena for C.E.'s School Records

Croxton also contends that the trial court erred in sustaining the Commonwealth's motion to quash several affidavits and requests for a subpoena *duces tecum.*  The quashed subpoenas requested copies of C.E.'s school records, specifically, any "counseling records, behavioral and disciplinary record, nurses notes/reports, and report cards (including teachers comments)."

Croxton's articulated purpose for seeking C.E.'s school records was "to obtain evidence as to prior unsubstantiated claims of sexual activity by [C.E.] with other young children." Specifically, Croxton argued at the pretrial hearing that C.E. had

> falsely accused a child [] of having sex with her and she's accused
> a [different] child of having sex with her and said she wanted to
> have sex with other boys. . . . I think [] it's very plausible and
> probable, in fact, that . . . she's done the same sort of activity
> among her peers in school.

Croxton contends on appeal that, by sustaining the Commonwealth's motion to quash, his "ability to cross-examine [C.E.] was unfairly restricted" because "the defense [was prevented] from exhausting all avenues in examining her credibility, upon which the prosecution's whole case rested."

"A criminal defendant does not have a right to discovery, except as to exculpatory evidence."  Nelson v. Commonwealth, 41 Va. App. 716, 727 n.7, 589 S.E.2d 23, 28 n.7 (2003). A criminal defendant's right to discover evidence in his favor, however, encompasses evidence that might be used to impeach the prosecution's witnesses.  See Brady v. Maryland, 373 U.S. 83, 87 (1963); see also United States v. Bagley, 473 U.S. 667, 676 (1985) (noting that "[i]mpeachment evidence, . . . as well as exculpatory evidence, falls within the Brady rule," reasoning that "[s]uch evidence is 'evidence favorable to the accused'" because, "if disclosed and used effectively, it may make the difference between conviction and acquittal"); Lovitt v. Warden, 266 Va. 216, 245, 585 S.E.2d 801, 817 (2003) ("The Brady disclosure requirements

extend to information that can be used to impeach a witness' credibility."), cert. denied, 124 S. Ct. 2018 (2004).

Also, "the case law in Virginia clearly gives a defendant the right to request a subpoena *duces tecum* for evidence that is inculpatory or exculpatory, as long as the object of the subpoena is material to the case." Id.; see also Rule 3A:12(b); Gibbs v. Commonwealth, 16 Va. App. 697, 699, 432 S.E.2d 514, 515 (1993). However, a subpoena *duces tecum* will be issued only if the defendant has a "'substantial basis for claiming materiality exists.'" Cox v. Commonwealth, 227 Va. 324, 328, 315 S.E.2d 228, 230 (1984) (quoting United States v. Agurs, 427 U.S. 97, 106 (1976)). Thus, "[a] subpoena *duces tecum* should not be used when it is not intended to produce evidentiary materials but is intended as a 'fishing expedition' in the hope of uncovering information material to the defendant's case." Farish v. Commonwealth, 2 Va. App. 627, 630, 346 S.E.2d 736, 738 (1986).

In order to reverse a judgment refusing discovery, "'a reasonable probability [must exist] that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Patterson v. Commonwealth, 3 Va. App. 1, 8, 348 S.E.2d 285, 289 (1986) (quoting Bagley, 473 U.S. at 682); see also Lovitt, 266 Va. at 244, 585 S.E.2d at 817 ("Exculpatory evidence is material if there is a reasonable probability that the proceeding would have resulted in a different outcome had the evidence been disclosed to the defense."); Soering v. Deeds, 255 Va. 457, 464, 499 S.E.2d 514, 517 (1998) ("[The] petitioner must show that when the case is evaluated in the context of the entire record, including the omitted evidence, a jury would have entertained a reasonable doubt regarding petitioner's guilt."); Nelson, 41 Va. App. at 728, 589 S.E.2d at 29 ("[T]his Court will not overturn a conviction based on a trial court's refusal to grant a subpoena to a defendant unless a showing of prejudice is made." (citing Gibbs, 16 Va. App. at 701, 432 S.E.2d at 516 ("The trial court's refusal to issue a subpoena *duces*

- 8 -

*tecum*, however, is not reversible error absent a showing of prejudice.”))). “A ‘reasonable probability’ is one that is sufficient to undermine confidence in the outcome of the proceeding.” Lovitt, 266 Va. at 244, 585 S.E.2d at 817. “At the heart of this inquiry is a determination whether the evidence favorable to the defendant could reasonably be considered as placing the entire case in such a different light that confidence in the verdict is undermined.” Id.

Here, Croxton sought the evidence because he believed it was *possible* that the records would reflect that C.E. made sex-related comments “among her peers in school.” However, the alleged incidents with the other children did not take place at school, there was no evidence that either child attended school with C.E., there was no evidence that C.E. had actually spoken with her teachers or other school employees about her alleged sexual activity, and there was no evidence that C.E.’s teachers had overheard her talking to other students about sex. Croxton’s speculative assertions therefore failed to establish a link between the school records and the charges against him.

Moreover, Croxton called several witnesses who testified about C.E.’s prior claims of sexual activity, and Croxton cross-examined C.E. about those prior claims. Because Croxton presented evidence relating to C.E.’s alleged prior complaints of sexual abuse, Croxton has not established that the school records—even if they documented other claims of sexual abuse— would have “plac[ed] the entire case in such a different light that confidence in the verdict is undermined.” Lovitt, 266 Va. at 244, 585 S.E.2d at 817; see also Soering, 255 Va. at 465, 499 S.E.2d at 518 (“‘The mere possibility that an item of undisclosed information might have helped the defense . . . does not establish “materiality” in the constitutional sense.’” (quoting Agurs, 427 U.S. at 109-10)). Accordingly, we hold that the trial court did not err in sustaining the Commonwealth’s motion to quash the subpoenas.

C.  Sufficiency of the Evidence

Finally, Croxton contends that the evidence was insufficient to support his convictions. Croxton reasons that C.E. "was shown to have an active imagination as to sexual activity," that she "had a motive to lie about Mr. Croxton in order to remove him from her life," and that "[h]er claims were unreliable." Croxton concludes that C.E.'s testimony "should have been found to be insufficient to prove her allegations beyond a reasonable doubt."

When the sufficiency of the evidence is challenged on appeal, the judgment of the trial court will not be set aside unless it appears from the evidence that the judgment is "plainly wrong or without evidence to support it." Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). Also, "[g]reat deference must be given to the factfinder who, having seen and heard the witnesses, assesses their credibility and weighs their testimony." Walton v. Commonwealth, 255 Va. 422, 426, 497 S.E.2d 869, 871 (1998).

During Croxton's trial, C.E. discussed the various sexual events that allegedly occurred after she moved in with Croxton. She also described Croxton's erection, indicating that his "private" was about six inches long while he was putting it on her "private," but that at other times it was two to three inches long. C.E. testified that she did not remember ever walking in on Croxton when he was playing the "sex movies" in the living room. C.E. admitted that she had told her mother that she had "sucked" the penis of a boy about her age. She also admitted that she had told her cousins that she had "sex" with a different boy about her age, but she testified that the boy's clothes were on during the incident.[4] Finally, C.E. testified that she could not remember claiming that two other relatives had touched her inappropriately.

---

[4] The boy was called to testify, but he could not remember ever "play[ing] a game where [they] touched each other," or "play[ing] doctor, [or] taking [their] clothes off."

During her testimony, Sharon testified that C.E. has "a propensity to lie." During cross-examination, however, Sharon conceded that she would have "nowhere to go" if she left Croxton, also confirming that she was again pregnant with Croxton's child. Sharon admitted that Croxton had been left alone with C.E. for short periods of time, but she testified that she "checked in" on Croxton and C.E. "every two or three minutes" when they were alone together. Sharon also testified that C.E. had never asked "what the white stuff was that came out of a man's penis."

Croxton contends on appeal that the evidence was insufficient to support his conviction because C.E.'s testimony was inherently unbelievable. However, "where a trial court sitting without a jury hears witnesses testify and observes their demeanor on the stand, it has the right to believe or disbelieve their statements." Morning v. Commonwealth, 37 Va. App. 679, 686, 561 S.E.2d 23, 26 (2002); see also Aldridge v. Commonwealth, 44 Va. App. 618, 654, 606 S.E.2d 539, 557 (2004). Moreover, a conviction for rape and other sexual offenses may be sustained solely upon the uncorroborated testimony of the victim. Garland v. Commonwealth, 8 Va. App. 189, 191-93, 379 S.E.2d 146, 147 (1989).

Here, the trial court specifically found that C.E. was a credible witness, noting that, "in all of these cases, the cases rise and fall on the testimony of the victim and I concur with the Commonwealth, I thought that the victim made an incredible witness, as far as the court was concerned." When given the choice between believing Croxton's version of events and C.E.'s version of events, the trial court chose to believe C.E. Thus, considering C.E.'s consistent descriptions of the alleged abuse throughout the course of these proceedings, we cannot conclude that her testimony was incredible as a matter of law.

For these reasons, we affirm Croxton's convictions for taking indecent liberties with a minor child, in violation of Code § 18.2-370.1, and his convictions for aggravated sexual battery, in violation of Code § 18.2-67.3.

<u>Affirmed.</u>