COURT OF APPEALS OF VIRGINIA


Present:   Judges Annunziata, Bumgardner and Frank[1]
Argued at Chesapeake, Virginia


JOHN BYRD NELSON
                                                    OPINION BY
v.        Record No. 3022-02-1            JUDGE ROBERT P. FRANK
                                               DECEMBER 2, 2003
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                          Verbena M. Askew, Judge

          James B. Covington for appellant.

          Stephen R. McCullough, Assistant Attorney General (Jerry W.
          Kilgore, Attorney General, on brief), for appellee.


     John Byrd Nelson (appellant) appeals his convictions by a jury of taking indecent liberties

with a child, in violation of Code § 18.2-370; sexual object penetration of a victim under the age of

thirteen, in violation of Code § 18.2-67.2(A); and three counts of forcible sodomy, in violation of

Code § 18.2-67.1(A).  Appellant argues the trial court erred in (1) refusing him access to

subpoenaed documents, (2) failing to excuse a juror during the trial, (3) failing to dismiss the

forcible sodomy indictments for failure to state an offense, (4) denying his motion for a bill of

particulars, and (5) refusing to consolidate the forcible sodomy indictments.  For the reasons below,

we affirm appellant's convictions.[2]

---

     [1] Appellant had an earlier trial that ended with a hung jury.  During oral argument on this
appeal, Judge Frank realized his wife sat on that earlier jury.  Although Judge Frank offered to
recuse himself, the parties indicated they did not object to him remaining on the panel.

     [2] As most of the particulars of the offenses are not directly relevant to appellant's
arguments, the specific factual bases for the convictions are not discussed in this opinion.

## I. Sealing Subpoenaed Documents

Appellant was charged with committing sexual assault on a victim under the age of fourteen. Prior to trial, appellant requested a subpoena *duces tecum* for the medical records of Dr. Alan Rountree, a doctor who treated the victim after the incidents.[3] Although the subpoena was issued, the trial court sealed the documents prior to their release to appellant and the Commonwealth. At the hearing on this subpoena, the court explained:

> The Court, frankly, it reviewed a number of cases that dealt with this issue . . . and it thinks it would be highly prejudicial to the victim to release that information. I frankly don't believe that you can review the information and not tell your client. I think you have an ethical obligation to tell him and I don't think that that would be appropriate.
>
> So what the Court's going to do is seal these records . . . .
>
> But the Court looked at these records very carefully, studied the cases and determined it would not be appropriate to release them. The Court thought the others were material to your case.[4] It did release those and it thought it was also exculpatory. But I think the real test is whether it's material to your case. You have a right to it if it decides it is material. These records aren't material at all and the Court is not going to – you haven't convinced me otherwise.

Appellant argues Rule 3A:12(b) mandates "examination and review" of the subpoenaed documents "by the parties and counsel." He contends the rule requires a "determination regarding materiality be made at the time the subpoena *duces tecum* is requested." If the documents are material, appellant argues, then the trial court cannot refuse to release the items to the parties for their examination. We disagree.

---

[3] Appellant was allowed access to Dr. John Lee's records, the physician who initially discovered the victim was hearing voices and who prescribed medication for the condition prior to these incidents. Dr. Lee testified at trial.

[4] The trial court previously allowed appellant and the Commonwealth to review the subpoenaed records of Dr. Lee, who treated the victim prior to the incident date.

Decisions involving discovery issues are within the discretion of the trial court, and appellate courts will not reverse those decisions "unless 'the action taken was improvident and affected substantial rights.'" O'Brian v. Langley Sch., 256 Va. 547, 552, 507 S.E.2d 363, 366 (1998) (quoting Rakes v. Fulcher, 210 Va. 542, 546, 172 S.E.2d 751, 755 (1970)). See also Willard v. Moneta Bldg. Supply, Inc., 258 Va. 140, 153 n.12, 515 S.E.2d 277, 286 n.12 (1999). An appellant must show prejudice[5] from the trial court's ruling before this Court will overturn the conviction. Gibbs v. Commonwealth, 16 Va. App. 697, 701, 432 S.E.2d 514, 516 (1993).

Rule 3A:12(b) addresses the "[p]roduction of [d]ocumentary [e]vidence" before a trial court. Initially, this rule explains the process for obtaining documents:

> Upon notice to the adverse party and on affidavit by the party applying for the subpoena that the requested writings or objects are material to the proceedings and are in the possession of a person not a party to the action, the judge or the clerk may issue a subpoena duces tecum for the production of writings or objects described in the subpoena. Such subpoena shall command either (1) that the individual to whom it is addressed shall appear in person and with the items described either before the court or the clerk or (2) that such individual shall deliver the items described to the clerk.

Although appellant argues the contrary, nothing in this rule requires that the trial court make a determination on the materiality of the requested items prior to issuance of a subpoena. In fact, the rule does not require any ruling by a judge, as the clerk also has the authority to issue a subpoena if a party has filed an appropriate affidavit and notice. A plain reading of the rule does not include a requirement that the trial court rule on materiality prior to the issuance of a subpoena. See Rasmussen v. Commonwealth, 31 Va. App. 233, 238, 522 S.E.2d 401, 403 (1999) (noting courts prefer to use the plain meaning of words in statutes).

---

[5] Materiality and prejudice are different concepts. See Neeley v. Commonwealth, 17 Va. App. 349, 356-57, 437 S.E.2d 721, 725 (1993) (discussing relevance, materiality, and prejudice as three different concepts).

Appellant also contends that, once the requested items are produced, Rule 3A:12(b) requires that a trial court allow all the parties access to those items without limitation. He relies on the following language of the rule:

> Any subpoenaed writings and objects, regardless by whom requested, shall be available for examination and review by all parties and counsel. Subpoenaed writings or objects shall be received by the clerk and shall not be open for examination and review except by the parties and counsel unless otherwise directed by the court.

Rule 3A:12(b) then provides:

> Where subpoenaed writings and objects are of such nature or content that disclosure to other parties would be unduly prejudicial, the court, upon written motion and notice to all parties, may grant such relief as it deems appropriate, including limiting disclosure, removal and copying.

The Commonwealth argues the above provision permits the trial court to limit access to the subpoenaed items. We agree with the Commonwealth that trial courts are permitted to restrict the viewing of subpoenaed documents.

The provision of Rule 3A:12(b) that prohibits "examination and review except by the parties and counsel" is modified by the clause "unless otherwise directed by the court." This language plainly allows the court to either expand or limit the normal conditions for viewing the subpoenaed items, whether the examination is by the parties, counsel, or non-parties. See Green v. Commonwealth, 28 Va. App. 567, 569, 507 S.E.2d 627, 629 (1998) (explaining that courts should consider the plain language of a statute when determining its meaning); Gilliam v. Commonwealth, 21 Va. App. 519, 522-23, 465 S.E.2d 592, 594 (1996).

Without judicial authority to limit review by the parties, items that are immaterial to the proceedings could be provided to the parties.[6] To avoid allowing an opposing party access to

---

[6] While a party must aver an affidavit that requested writings and/or objects are material, nothing in the Rules suggest this statement by a party is binding on the court or non-reviewable.

items that are immaterial, a trial court must review the requested documents and determine whether they are material. Without issuing the subpoena to obtain those documents, a trial court would have no opportunity to review their contents and rule on their materiality. For example, in Gibbs, 16 Va. App. at 698-99, 432 S.E.2d at 515, a case cited by appellant, the trial court "reviewed the documents [produced by the bank's representative] *in camera* and ruled" on their materiality. See also N. Am. Mortgage Investors v. Pomponio, 219 Va. 914, 252 S.E.2d 345 (1979) (remanding a case for the trial court to review the subpoenaed documents and determine if they were subject to a privilege). Clearly, the trial court can consider, after the production of the documents, whether the items are material or immaterial to the proceedings for which they were subpoenaed. See, e.g., NAACP, Inc. v. Comm. on Offenses Against the Admin. of Justice, 199 Va. 665, 101 S.E.2d 631, vacated on other grounds, 358 U.S. 40 (1958) (discussing a trial court's denial of a motion to quash subpoenas *duces tecum* after they were issued).

The following provision of Rule 3A:12(b), which allows the court to limit disclosure of items that are "unduly prejudicial" by means such as "limiting disclosure, removal and copying," makes sense only if it refers to the court's authority to limit the access of the parties in the case, as people who are not parties generally are not allowed access to any subpoenaed documents under Rule 3A:12(b).

Additionally, while appellant argues that "parties" in the provision allowing "examination and review" refers to the people directly involved in the legal action, he contends the same word, modified by "other," refers to all people who are not parties to the action. His definition of "parties" is contradictory. He defines "other parties" in the second paragraph of Rule 3A:12(b), which allows the courts to restrict access to "unduly prejudicial" subpoenaed documents, as "non-parties." However, the previous paragraph generally prohibits non-parties' access to subpoenaed documents, "unless otherwise directed by the court." Rule 3A:12(b). As

non-parties are denied access to subpoenaed documents in the earlier paragraph, appellant's argument, that the later paragraph is designed only to give the court the authority to deny access to non-parties, makes the earlier portion of the rule irrelevant. As this Court avoids such contradictory and strained constructions of statutes, see Green, 28 Va. App. at 569, 507 S.E.2d at 629; Gilliam, 21 Va. App. at 522-23, 465 S.E.2d at 594, we also avoid such constructions of our Rules.

We also note appellant's argument would eliminate motions to quash, which are a third-party's only option to prevent disclosure of subpoenaed information, as third-parties do not receive notice of a subpoena until it is served on them. See Rule 3A:12(b) (requiring notice to the adverse party before issuance of a subpoena *duces tecum*, but not notice to the non-party). See, e.g., Kauffmann v. Commonwealth, 8 Va. App. 400, 408, 382 S.E.2d 279, 283 (1989) (discussing a non-party's motion to quash after issuance of a subpoena). Additionally, the adverse parties also need the option of a motion to quash, as they may not receive notice of the request for a subpoena *duces tecum* until after the issuance of the subpoena. See Rule 3A:12(b) (requiring only notice to adverse parties, not notice within a number of days before the subpoena is issued). See, e.g., Castelow v. Commonwealth, 29 Va. App. 305, 314-15, 512 S.E.2d 137, 141 (1999) (discussing a motion to quash by the Commonwealth).

Appellant also argues the trial court denied his right to call for evidence in his favor and to prepare his defense when it denied him access to Dr. Rountree's records.[7] The

---

[7] A criminal defendant does not have a right to discovery, except as to exculpatory evidence. See Weatherford v. Bursey, 429 U.S. 545, 559-60 (1977) (explaining the Constitution does not include a general right to discovery in criminal cases); Brady v. Maryland, 373 U.S. 83, 87 (1963) (finding the state must provide a defendant with information that could be used to impeach the state's witnesses); Lowe v. Commonwealth, 218 Va. 670, 679, 239 S.E.2d 112, 118 (1977) ("There is no general constitutional right to discovery in a criminal case."); Knight v. Commonwealth, 18 Va. App. 207, 212, 443 S.E.2d 165, 168 (1994) (finding due process does require disclosure of exculpatory evidence). However, the case law in Virginia clearly gives a defendant the right to request a subpoena *duces tecum* for evidence that is inculpatory or

Commonwealth correctly notes this Court will not overturn a conviction based on a trial court's refusal to grant a subpoena to a defendant unless a showing of prejudice is made. Gibbs, 16 Va. App. at 701, 432 S.E.2d at 516 ("The trial court's refusal to issue a subpoena *duces tecum*, however, is not reversible error absent a showing of prejudice."). Here, the trial court effectively refused to grant the subpoena for Dr. Rountree's records when it sealed those documents. Because the trial court denied appellant access to these records, this Court must "determine if [the] evidence not disclosed to the defense was 'material.'" Patterson v. Commonwealth, 3 Va. App. 1, 8, 348 S.E.2d 285, 289 (1986). If the documents are material, their nondisclosure has prejudiced appellant "'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Id. (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)).

After reviewing the sealed documents, we find no reasonable probability that the result of the proceeding would have been different if the records were given to appellant. As the trial court indicated, nothing in these documents would have provided appellant with material to impeach any witnesses. Nothing in these documents suggests further avenues of investigation of which appellant was unaware. Therefore, appellant was not prejudiced by the trial court's refusal to provide him access to Dr. Rountree's records.

## II. Refusal to Question Juror during Trial

In the morning on the second day of trial, the prosecutor informed the trial court and appellant that Christine Lane, the foster mother of the victim, had left a message at the Commonwealth's office. Lane said "she knew one of the jurors that was seated from work at

---

exculpatory, as long as the object of the subpoena is material to the case. See Cox v. Commonwealth, 227 Va. 324, 328-29, 315 S.E.2d 228, 230-31 (1984) (finding documents requested by Cox in a subpoena *duces tecum* and used by the Commonwealth to prove its case were "material, and that denying the defendant access thereto violated her constitutional right [under Article I, § 8 of the Virginia Constitution] 'to call for evidence in [her] favor'").

Gateway over a year and a half ago." Lane added, "[A]t no time did [the victim] ever meet [the juror] or did he come in contact with her, that she doesn't know [the victim], doesn't know [Lane's] husband, she only knows her. And that while [the juror] was her direct supervisor, [the victim] did not even live with them."

Lane and the juror had "made eye contact and smiled" during *voir dire*, but the victim was sitting with his father and not Lane. Lane left the courtroom before *voir dire* was completed and did not return that day. During *voir dire*, the juror indicated she did not know any of the witnesses. She indicated she could evaluate the evidence fairly. Neither defense counsel nor the prosecutor asked if anyone knew the victim's foster parents. Nothing in the record suggests that the juror ever notified the trial court concerning problems with her impartiality nor that the juror's demeanor during the trial suggested any bias against appellant. Lane was not called as a witness.

After hearing about the message from Lane, appellant asked the trial court to inquire of the juror "[i]f she noticed anyone in the courtroom that she knew, that she knew personally, whether it was a witness or not, and whether the fact that that person was sitting in the courtroom had -- might, in her mind, have any connection with this case." The court denied appellant's request, stating, in part:

> [The juror] answered all the Court's questions, all your questions, voir dire questions, and the Commonwealth's questions.
>
> * * * * * * *
>
> I really just don't see why we should interrupt these proceedings to deal with that. There is nothing that shows that there is any kind of prejudice here to anybody. [Lane] is not a witness.
>
> * * * * * * *
>
> I think you've had an opportunity to ask them every question you possibly could, and you chose not to ask them whether or not they

had any relation and I don't see that it has anything to do with the case.

At the beginning of the third day of trial, appellant argued the victim "mention[ed] the name of his foster parent, Christine Lane, a couple of times." He contended the juror "must know" who Lane was, which caused "a great concern." He then moved for a mistrial. The trial court indicated appellant would not have been able to strike the juror for cause; therefore, the court denied the motion for a mistrial. On appeal, appellant argues the trial court "had a duty to inquire" into the possibility that the juror recognized Lane and had a duty to grant the motion for a mistrial when she refused to allow a hearing on the issue.

This appeal does not involve allegations of juror misconduct. Appellant does not claim a juror untruthfully answered a question during *voir dire*. The attorneys did not ask the venire panel any questions about knowing the victim's parents or foster parents. Instead, the allegation involves a series of speculative links: the possible recognition of Lane, which possibly could lead to an understanding that Lane was a foster parent of the victim, which could have caused the juror to remember possibly positive impressions of Lane from their prior working relationship,[8] and those feelings could have possibly biased the juror against appellant, such that she would ignore the trial court's instructions to evaluate the evidence and apply the law impartially. We find this claim of the potential for bias did not necessitate a hearing on the juror's recognition of Lane.

A defendant is "entitled to a fair trial, but not a perfect one." Lutwak v. United States, 344 U.S. 604, 619 (1953). See also Smith v. Phillips, 455 U.S. 209, 217 (1982) (noting *voir dire* is not "infallible" as "it is virtually impossible to shield jurors from every contact or influence

---

[8] Lane indicated only that she recognized the juror as her supervisor from a job that she held two years previous to the trial. She did not describe the relationship as personal or even friendly. She did indicate the victim was not living with her when she held the job. Appellant never asked to examine Lane regarding the nature of her relationship with the juror.

that might theoretically affect their vote").  "One touchstone of a fair trial is an impartial trier of

fact – 'a jury capable and willing to decide the case solely on the evidence before it.'"

McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 554 (1984) (quoting Smith v.

Phillips, 455 U.S. 209, 217 (1982)).

> Through voir dire and other competent evidence, the trial court
> must examine the venirepersons for signs of a mind set that
> "'would prevent or substantially impair the performance of [the]
> duties [of] a juror in accordance with his instructions and his
> oath.'"

Swanson v. Commonwealth, 18 Va. App. 182, 185, 442 S.E.2d 702, 704 (1994) (quoting Satcher

v. Commonwealth, 244 Va. 220, 236, 421 S.E.2d 821, 831 (1992)) .  See also McDonough

Power Equipment, 464 U.S. at 554 ("*Voir dire* examination serves to protect that [fair trial] right

by exposing possible biases, both known and unknown, on the part of potential jurors.").

> When the issue [of impermissible juror bias] arises from a
> "midtrial" challenge to a juror's impartiality, we "will reverse the
> trial court's decision only for an abuse of discretion," applying the
> "same standard" of review appropriate to appellate consideration
> of a decision to seat a venireperson.  Hunt v. Commonwealth, 25
> Va. App. 395, 399, 488 S.E.2d 672, 674 (1997); see David v.
> Commonwealth, 26 Va. App. 77, 80, 493 S.E.2d 379, 381 (1997)
> (juror impartiality [is] a factual determination, disturbed on appeal
> only for "manifest error").  Hence, we will not overturn "the denial
> of a motion for a mistrial . . . unless there exists a manifest
> probability that [the ruling] was prejudicial."  Taylor [v.
> Commonwealth], 25 Va. App. [12,] 17, 486 S.E.2d [108,] 110
> [(1997)].

Green v. Commonwealth, 26 Va. App. 394, 401, 494 S.E.2d 888, 891 (1998).

Appellant argues the trial court had a duty to conduct a hearing and investigate the

potential for bias by questioning the juror once he made his request for the hearing.  As part of

this position, appellant contends public confidence in the integrity of the criminal process

necessitates, at minimum, a hearing into any allegation of potential bias or misconduct by a juror.

This Court has not previously addressed this specific question.

Several federal courts do not require an evidentiary hearing whenever an allegation of bias is made. See United States v. Frost, 125 F.3d 346, 377 (6th Cir. 1997) (explaining that a hearing is required only "when the alleged contact [with a juror] presents a likelihood of affecting the verdict"); United States v. Angulo, 4 F.3d 843, 847 (9th Cir. 1993) ("An evidentiary hearing is not mandated *every* time there is an allegation of jury misconduct or bias." (emphasis in original)); United States v. Caldwell, 776 F.2d 989, 998 (11th Cir. 1985) ("The more speculative or unsubstantiated the allegation of misconduct, the less the burden to investigate. . . . The more serious the potential jury contamination, especially where alleged extrinsic influence is involved, the heavier the burden to investigate."). These circuits have held that the trial court must first determine whether the claim of bias or misconduct is reasonable. If the claim is reasonable, then the trial court should investigate the allegation by holding an evidentiary hearing at which jurors may testify. United States v. Rigsby, 45 F.3d 120, 124-25 (6th Cir. 1995) ("When there is a *credible* allegation of extraneous influences, the court must investigate sufficiently to assure itself that constitutional rights of the criminal defendant have not been violated." (emphasis added)); United States v. Davis, 15 F.3d 1393, 1412 (7th Cir. 1994) ("A court is under no obligation to inquire into the possibility of improper influence until the defendant comes forward with a colorable allegation of taint."); United States v. Barshov, 733 F.2d 842, 851 (11th Cir. 1984) ("The duty to investigate arises only when the party alleging misconduct makes an adequate showing of extrinsic influence to overcome the presumption of jury impartiality.").

We adopt the approach of the several federal circuits. In situations such as the case before us, the trial court should consider the totality of the circumstances and determine whether a party presented credible allegations of bias that undermine the prior determination of impartiality reached by the court at the conclusion of the *voir dire* process. Cf. Haddad v.

Commonwealth, 229 Va. 325, 330, 329 S.E.2d 17, 20 (1985) (holding that Virginia courts should be reluctant to presume prejudicial misconduct by jurors); Patterson v. Commonwealth, 39 Va. App. 658, 669, 576 S.E.2d 222, 228, (2003) (noting impartiality is evaluated by examining the entire *voir dire*); David v. Commonwealth, 26 Va. App. 77, 81, 493 S.E.2d 379, 381 (1997) (noting juror impartiality is a factual determination of the trial court). In this case, we find the trial court did not err in refusing to investigate the allegation of potential bias. Appellant was not prejudiced by the trial court's refusal to conduct a hearing under these circumstances.

Appellant does not allege that the juror answered a *voir dire* question untruthfully. As the trial court noted, the veniremen were not asked if they knew Lane. If appellant believed an acquaintance with Lane was an important determinate of possible bias, he had the opportunity to ask that question. As the Supreme Court noted in a case questioning juror bias at the conclusion of a trial:

> [I]t ill serves the important end of finality to wipe the slate clean simply to recreate the peremptory challenge process because counsel lacked an item of information which objectively he should have obtained from a juror on *voir dire* examination.

McDonough Power Equip., 464 U.S. at 555. Cf. LeVasseur v. Commonwealth, 225 Va. 564, 582, 304 S.E.2d 644, 653 (1983) (affirming a conviction where the defendant was given "every reasonable opportunity to ask relevant questions which would be designed to elicit bias or prejudice on the part of prospective jurors").

Additionally, the information from Lane did not credibly allege any favoritism toward the victim or bias against appellant. Lane's statement said only that she knew the juror was her supervisor two years earlier and that the juror had never met the victim. Apparently, they "made eye contact and smiled" during *voir dire*.

However, the record contains no direct evidence that the juror remembered Lane, and no evidence suggests that the juror was influenced by any recognition of her former subordinate.

- 12 -

The juror never saw Lane with the victim. Although appellant alleges Lane was mentioned numerous times during the victim's testimony, he neglects to point to those specific instances in the record. This Court has found only one reference to "the Lanes" in the victim's testimony as presented in the appendix.

Lane's statement said only that she and the juror had a working relationship at one point almost two years earlier. Nothing in the statement suggested they had seen each other in the intervening years. Nothing suggested the juror had a particular fondness for Lane. Nothing suggested the juror had a bias in favor of Lane such that she would ignore the trial court's instruction to evaluate the evidence and apply the law fairly. Nothing in the record indicates any of the jurors exhibited a lack of impartiality.

The juror who allegedly knew Lane did not attempt to contact the trial court about any bias. During *voir dire* she indicated that she could evaluate the evidence fairly and impartially. Although appellant's counsel asked the veniremen to "let the court know" if they recalled "an influence on your ability to be impartial in this case," the juror never contacted the trial court. Nothing suggests the juror ignored the final instructions from the court.

In Green, 26 Va. App. 394, 494 S.E.2d 888, this Court considered an analogous issue. Instead of a message from a third party, however, Green involved a note from the jury, which had been excused to begin its deliberations. The note indicated that "relatives of [one juror] were involved in a drive-by shooting." Id. at 399, 494 S.E.2d at 890. During *voir dire*, the potential jurors were asked if members of their "immediate family [had] been the victim of a crime involving the use of a firearm." Id. at 397, 494 S.E.2d at 889. This Court found, "[T]he note did not establish an untruthful response on *voir dire*. Moreover, the note clearly did not facially demonstrate bias or partiality. Thus, defendant failed to demonstrate both juror misconduct and bias." Id. at 402, 494 S.E.2d at 891-92. This conclusion applies to the present

case, perhaps more strongly as *no juror* contacted the trial court and appellant makes *no allegations* of an untruthful response during *voir dire*.

Appellant did not ask for any additional instruction to the jury on personal biases. He did not ask to question Lane on her relationship with the juror. On appeal, he only speculates that a bias existed that influenced the outcome of the trial. Nothing in the record lends credence to this assertion. The trial court did not err in denying appellant's motion to examine the juror nor in denying the motion for a mistrial.

### III. Failure to State an Offense in the Indictments

Three of the original indictments read:

> The Grand Jury Charges that, in the City of Newport News: John Byrd Nelson, On or about the 24th day of August, 2000, through the 25th day of August, 2000, feloniously did cause [the victim], a child under the age of thirteen (13) years to commit sodomy, in violation of § 18.2-67.1 of the Code of Virginia (1950) as amended.

The indictments also referenced Code § 18.2-67.1(A)(1).

Appellant argued in a pretrial motion that this language "failed to allege an offense under Section 18.2-67.1." He explained that the indictments' language suggested a violation of the section of the statute criminalizing behavior that "causes a complaining witness, whether or not his or her spouse, to engage in such acts with any other person." The Commonwealth explained it did not intend to prosecute appellant under a theory that he caused the victim to engage in sodomy with a third person, but instead that appellant forced the victim to commit sodomy with him. The prosecutor then moved to amend the indictments to clarify this intent. Appellant objected, explaining, "our position is the indictments are fatally defective as is, and therefore, simply making an amendment to the language doesn't make them legally sufficient."

The trial court allowed the Commonwealth to amend the indictments, eliminating the "feloniously did cause" wording and replacing it with "did feloniously engage in sodomy with."

Appellant appeals, arguing the indictment was fatally defective and should have been dismissed, not amended, by the trial court. The Commonwealth argues on appeal that the indictments were not fatally flawed and that the amendments did not change the nature of the offense charged. We agree with the Commonwealth.

"An indictment need not be drafted in the exact words of the applicable statute so long as the accused is given notice of the nature and character of the offense charged." Black v. Commonwealth, 223 Va. 277, 282, 288 S.E.2d 449, 451 (1982).

> When considering on appeal whether an indictment charged a particular offense, we limit our scrutiny to the face of the document. When a statute . . . "contains more than one grade of an offense and each grade carries a different punishment[,] the indictment must contain an assertion of the facts essential to the punishment sought to be imposed." Hall v. Commonwealth, 8 Va. App. 350, 352, 381 S.E.2d 512, 513 (1989).

Moore v. Commonwealth, 27 Va. App. 192, 198, 497 S.E.2d 908, 910-11 (1998). Additionally, Code § 19.2-220 states, "In describing the offense, the indictment or information may use the name given to the offense by the common law, or the indictment or information may state so much of the common law or statutory definition of the offense as is sufficient to advise what offense is charged."

The original indictment here alleged appellant "caused" the victim to commit sodomy in violation of Code § 18.2-67.1.[9] The indictment mentioned only two people, appellant and the victim. The language of the indictment did not exclude the possibility that appellant was the person with whom the victim was "caused" to commit sodomy. The use of "caused," as opposed to "engaged in," in this context was not a fatal variance. See Morris v. Commonwealth, 33 Va. App. 664, 668, 536 S.E.2d 458, 460 (2000) (finding the difference between the terms

---

[9] Whether with the appellant or a third person, the statute criminalizes both behaviors as "sodomy" and provides the same sentencing range.

"adjudicated" and "determined" did not create a fatal variance in an indictment for driving after having been adjudicated an habitual offender).  Therefore, the indictment was not void when it was amended.

Appellant argues the precedents of Powell v. Commonwealth, 261 Va. 512, 552 S.E.2d 344 (2001), and Wilder v. Commonwealth, 217 Va. 145, 225 S.E.2d 411 (1976), require that this Court overturn his convictions.  We find these cases are not controlling here.

Powell did involve an amendment to an indictment.  However, Powell did not argue the original indictment was void; he argued the amendment "impermissibly expanded the nature and character of the charges."  261 Va. at 532-33, 552 S.E.2d at 356.  In Powell, the Commonwealth amended the capital murder indictment to add two alternative and additional counts to the indictment.  Id. at 534, 552 S.E.2d at 356-57.  The Supreme Court found the amendment allowed the fact finder to convict Powell of an *additional* offense of capital murder under Code § 18.2-31(5).  Id.  Appellant does not argue the amendment allowed the fact finder to convict him of two offenses on each indictment instead of one.  Therefore, Powell does not control our decision here.

Wilder is likewise inapplicable to the case before us.  Wilder was indicted for "possession" of a stolen credit card, which the Supreme Court held did not describe a crime under the Code section with which he was charged.  217 Va. at 147-48, 225 S.E.2d at 413. Appellant argues his case is similar as the indictments charging sodomy failed to name a third person with whom appellant "caused" the victim to engage in sodomy, a different type of sodomy under Code § 18.2-67.1(A).[10]

---

[10] Appellant also seems to argue the indictments did not specify that the victim and appellant were not married (an element of one type of sodomy listed in Code § 18.2-67.1(A)). Appellant mentioned this portion of the statute while arguing to the trial court.  However, he did not make the argument to the trial court that he now proposes on appeal.  Therefore, he has not preserved this part of his argument for appeal.  See Chase v. Commonwealth, 37 Va. App. 194,

We find the original indictments, although oddly worded, did describe a crime under Code § 18.2-67.1(A) with sufficient specificity to provide notice to appellant. The indictments listed only two names, appellant and the victim, as the people involved in the circumstances. The language was sufficient to "give the accused notice of the nature and character of the offense charged." Id. at 147, 225 S.E.2d at 413.[11]

## IV. Denial of Motion for a Bill of Particulars

"[W]hether to require the Commonwealth to file a bill of particulars is a matter that falls within the sound discretion of the trial court . . . ." Walker v. Commonwealth, 258 Va. 54, 63, 515 S.E.2d 565, 570 (1999). Appellant argues the trial court abused this discretion because he required a bill of particulars to give him notice of the particular acts of sodomy that each indictment alleged, especially as the indictments alleged sodomy on the same day and with the same victim. We find the trial court did not abuse its discretion in denying his motion.

"'The purpose of a bill of particulars is to state sufficient facts regarding the crime to inform an accused in advance of the offense for which he is to be tried. He is entitled to no more.'" Swisher v. Commonwealth, 256 Va. 471, 480, 506 S.E.2d 763, 768 (1998) (quoting Hevener v. Commonwealth, 189 Va. 802, 814, 54 S.E.2d 893, 899 (1949)). Appellant knew sufficient facts about the Commonwealth's case without a bill of particulars. He heard the victim testify at a preliminary hearing regarding the particular acts of sodomy committed with appellant on the day in question. He had a transcript of that hearing. Prior to the trial in which he was

---

197, 555 S.E.2d 422, 424 (2001) (explaining the same argument must be made to the trial court to preserve the particular issue for appeal).

[11] The Commonwealth has never argued that the indictments were sufficient to charge sodomy under the second category criminalized by the Code section; therefore, we need not consider appellant's arguments on that issue.

convicted, appellant heard the victim testify on these same indictments at a previous trial that ended in a mistrial.

A bill of particulars could not have provided appellant with any more information than he already had. The trial court did not abuse its discretion in denying appellant's motion.

## V. Failure to Consolidate Sodomy Indictments

Appellant argues Blockburger v. United States, 284 U.S. 299 (1932), prohibits more than one indictment for the same offense when the indictments allege the same elements. He contends, therefore, the several convictions of sodomy under Code § 18.2-67.1(A)(1) were unconstitutional. Appellant misapplies Blockburger.

Appellant was charged with three counts of sodomy, all occurring on the same day and with the same victim. Appellant made a motion to consolidate the three sodomy indictments into one, as they described the same offense facially. The trial court denied the motion. The Commonwealth's evidence proved three different acts of sodomy occurred between the victim and appellant on the day alleged in the indictments. Appellant does not deny that three "separate volitional acts" occurred. Instead, he argues they were part of a continuing "transaction," best viewed as one crime.

> The issue of [whether double jeopardy prohibits] multiple punishments actually arises in two contexts. First, two or more statutes may proscribe a particular course of conduct as criminal offenses. Second, a defendant's conduct may constitute more than one violation of a single criminal proscription. In either context, the question is what punishments are constitutionally permissible.
>
> The question of what punishments are constitutionally permissible is not different from the question of what punishments the legislature authorized. The legislature in its discretion may determine the appropriate "unit of prosecution" and set the penalty for separate violations. The double jeopardy clauses prohibit the courts from exceeding the legislative authorization by imposing multiple punishments for the same offense.

Jordan v. Commonwealth, 2 Va. App. 590, 593-94, 347 S.E.2d 152, 154 (1986) (citations and footnote omitted). The question here, therefore, is whether Code § 18.2-67.1(A) authorizes multiple punishments in the context of this case. We find the legislature intended to allow multiple units of prosecution in cases such as this.

Code § 18.2-67.1(A) proscribes "cunnilingus, fellatio, anallingus, *or* anal intercourse with a complaining witness." (Emphasis added.) This disjunctive language indicates that the legislature intended each act constitute a discrete unit of prosecution. We find Kelsoe v. Commonwealth, 226 Va. 197, 308 S.E.2d 104 (1983), is analogous to this case. In Kelsoe, the Supreme Court held a defendant could be convicted of three offenses of brandishing a firearm for pointing the gun at three different people on the same occasion. Id. See also Shears v. Commonwealth, 23 Va. App. 394, 477 S.E.2d 309 (1996) (allowing two convictions of possession of illegal substances).

Given the legislative intent, as indicated by the language of the statute, the trial court here did not err in denying appellant's motion for merger of the indictments.

## VI. Conclusion

We find appellant's arguments are without merit. We affirm his convictions.

Affirmed.