# COURT OF APPEALS OF VIRGINIA

**Record No. 0423-25-3**

CHRISTIAN THOMAS PERRY

v.

COMMONWEALTH OF VIRGINIA

Present: Judges O'Brien, AtLee and Senior Judge Petty
Argued by videoconference

Opinion Issued April 21, 2026

**FROM THE CIRCUIT COURT OF CARROLL COUNTY[1]**
Brett L. Geisler, Judge

Jonathan P. Sheldon (Sheldon & Flood, PLC, on briefs), for appellant.

Liam A. Curry, Assistant Attorney General (Jason S. Miyares,[2] Attorney General, on brief), for appellee.

**PUBLISHED OPINION BY**
**JUDGE RICHARD Y. ATLEE, JR.**

Following a jury trial, the trial court convicted Christian Thomas Perry of one count of aggravated sexual battery and three counts of taking indecent liberties with a child under the age of 15. Perry raises three arguments on appeal. First, he asserts that the trial court violated double jeopardy when it convicted him of multiple counts of indecent liberties. Next, Perry argues that the trial court committed an abuse of discretion when it permitted the Commonwealth to recall the victim for additional testimony on the second day of trial. Finally, Perry contends

---

[1] The events of this case took place in Grayson County. However, on the Commonwealth's motion, the Grayson County Circuit Court transferred venue to the Carroll County Circuit Court to ensure a fair and impartial jury.

[2] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

that the evidence was insufficient to sustain his aggravated sexual battery conviction. For the following reasons, we affirm.

## I. BACKGROUND

"On appeal, we review the evidence in the 'light most favorable' to the Commonwealth," the prevailing party below. *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)).

Perry met J.S. when she was 11 or 12 years old. Perry was friends with J.S.'s older sister, A.S. In May 2022, when J.S. was 14 years old and Perry was 18 years old, J.S. and her sister helped Perry build a fence at his home. The first time J.S. went to help, she rode to Perry's home with her sister, A.S. On that occasion, the group "hung out and . . . built [the] fence." At one point, Perry asked the girls how many people they had had sex with. As a joke, J.S. said that she has had sex with "an outrageous number" of people, and she and A.S. "were busting out laughing."

J.S. went to help with the fence again after school on May 10. She was supposed to ride with A.S. to Perry's house. Once school ended, however, A.S. needed to drive a friend to the nearby softball field, and she asked J.S. to wait at the school until she returned. After A.S. left, Perry suggested that J.S. ride with him instead of waiting, and J.S. agreed. J.S. sent A.S. a text message notifying A.S. that they had left.

Perry drove them to his house and parked his truck next to the barn. Perry and J.S. did not speak during the drive. Once he parked, he said, "I can't believe you've had sex." He asked J.S. if she had ever "made out with a guy," and, when J.S. said she had, he asked her to "show [him] how [she] know[s] how to do that." She told him no and noted that he had a girlfriend. He continued "begging" her to kiss him, so she relented and kissed him, hoping it would make him "just stop."

Perry then asked her if he could touch her breasts and "finger" her, and she said no. He took his penis out and began masturbating in front of her. He asked her to perform oral sex on him, and she said no. He told her that he needed to masturbate because she had given him an erection and "he couldn't build [the] fence with [an erection]." He then touched her breasts, reaching underneath her sweatshirt and bra, and he told her that "his girlfriend's [breasts] were littler than [J.S.'s]." When he lifted her clothing, J.S. said, "Stop." He also touched her vagina over top of her clothing. When he touched her, she attempted to move further away from him, pressing herself "up against the [passenger] door." J.S. "made it clear [she] didn't want" him to touch her. She later testified that, while this was occurring, she was hoping that A.S. would "hurry up and get [t]here" so that J.S. could "get away."

The encounter ended when A.S. arrived and parked behind Perry's truck. While Perry and A.S. went to begin working on the fence, J.S. spoke on the phone to her friend about the encounter. Her friend encouraged her to talk to her mother. While J.S. was still at Perry's house that afternoon, he "begg[ed] [her] not to tell anybody." At around 5:00 or 6:00 p.m., the group decided to go out for dinner. J.S. rode with A.S. and, during the drive, she told A.S. that Perry "tried to kiss [her]." A.S. said that they should not go to dinner, but J.S. insisted they go so that Perry would not know that she told A.S. When the sisters arrived home after dinner, J.S. immediately told her mother about what Perry had done. Her mother testified that, when J.S. "came running in the house," she was "freaking out" and "in panic mode."

A grand jury indicted Perry on four counts of indecent liberties with a child under the age of 15, in violation of Code § 18.2-370, and one count of aggravated sexual battery, in violation of Code § 18.2-67.3. Perry's trial lasted two days. After J.S. testified on the first day of trial, the Commonwealth informed the trial court that J.S. was subject to recall and, accordingly, asked the court not to excuse her. On the second day of trial, the Commonwealth recalled J.S., and Perry

objected, arguing that doing so gave the Commonwealth "another bite at the apple." The trial court overruled Perry's objection, finding that it had the discretion to allow additional testimony. During her testimony on the second day, J.S. clarified and supplemented certain aspects of her prior testimony.[3]

At the close of the Commonwealth's case-in-chief, Perry made a motion to strike, arguing that, due to alleged inconsistencies in J.S.'s initial statement and her testimony at trial, the Commonwealth had failed to prove "any of the elements" that it was required to establish. The trial court denied the motion to strike.

Perry testified in his own defense. He testified that when he and J.S. arrived at his home he told her that he didn't believe that she had ever kissed anyone before. He explained that J.S. asked how she could prove that she had, so he told her to kiss him. He claimed she then moved to the middle of the truck and kissed him. He asserted that the kiss was the only thing that happened in the truck that afternoon.

At the conclusion of all the evidence, Perry renewed his motion to strike, raising the same arguments previously raised. He also argued that all but one of his indecent liberties indictments should be dismissed as the acts underlying the indictments should "be considered parts of the same transaction and collectively constitute a single offense." The trial court denied the motion.[4] Ultimately, the jury found Perry guilty on all charges.

After trial, Perry filed a motion to set aside the verdict. Relevant here, Perry argued that a guilty verdict on one of the counts of indecent liberties precluded a guilty verdict on the remaining counts. He again argued that the acts underlying each conviction were part of the

---

[3] J.S. clarified that Perry touched her breasts under her clothing, but touched her vagina over top of her clothing. J.S. also described, in more detail, Perry's conduct while he masturbated in front of her.

[4] The trial court did strike one of the indecent liberties charges for different reasons.

- 4 -

same transaction and, thus, constituted a single offense. At a hearing, the trial court denied Perry's motion. Perry now appeals.

## II. ANALYSIS

A. *The legislature intended Code § 18.2-370(A) to authorize multiple units of prosecution.*

Perry argues that the trial court violated his double jeopardy protections by convicting him of multiple counts of indecent liberties. He contends that the acts underlying his convictions constitute a single offense because they were a part of a continuous transaction. We disagree.

"The Fifth Amendment to the Constitution of the United States declares that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.'" *Severance v. Commonwealth*, 295 Va. 564, 571-72 (2018) (quoting U.S. Const. amend. V). "In a simultaneous prosecution, the role of the Double Jeopardy Clause is 'limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense.'" *De'Armond v. Commonwealth*, 51 Va. App. 26, 32 (2007) (quoting *Stephens v. Commonwealth*, 263 Va. 58, 62 (2002)). "The legislature retains plenary discretion to 'determine the appropriate "unit of prosecution"' and to punish each violation separately." *Id.* (quoting *Nelson v. Commonwealth*, 41 Va. App. 716, 740 (2003)). "In determining the statutory unit of prosecution, 'the controlling factor is legislative intent.'" *Id.* at 32-33 (quoting *Kelsoe v. Commonwealth*, 226 Va. 197, 199 (1983)).

Relevant here, Code § 18.2-370(A) makes it unlawful for any individual over the age of 18 to commit any of the following acts with a child under the age of 15: (i) "[e]xpose his or her sexual or genital parts to [the] child . . . or propose that . . . such child expose his or her sexual or genital parts" to the defendant; (ii) "propose . . . [to] feel or fondle the sexual or genital parts of" the child; or (iii) "[p]ropose . . . the performance of an act of sexual intercourse, anal intercourse, cunnilingus, fellatio, or anilingus." Code § 18.2-370(A)(1), (3), (4).

The trial court convicted Perry of three separate violations of Code § 18.2-370(A): (1) for exposing his penis to J.S.; (2) for proposing that J.S. perform oral sex on him; and (3) for asking to touch and fondle J.S.'s genitals. Perry argues that these acts were part of a continuous transaction because he committed them within a relatively short period of time, in the same location, and with the same victim. Thus, he contends they constitute a single offense.

Perry's contention is misguided. Code § 18.2-370(A) proscribes "*any*" of the distinct acts listed. (Emphasis added). "This disjunctive language indicates that the legislature intended each act [to] constitute a discrete unit of prosecution." *Nelson*, 41 Va. App. at 740. "This interpretation parallels our understanding of the appropriate units of prosecution under other sex crime statutes." *De'Armond*, 51 Va. App. at 33; *see, e.g.*, *Carter v. Commonwealth*, 16 Va. App. 118, 128 (1993) (reasoning that a defendant should not be allowed "a 'free rape' merely because he chooses to repeat his crime on the same victim within a short period of time"); *Nelson*, 41 Va. App. at 740 (holding that the legislature intended the forcible sodomy statute to create a unit of prosecution for each act); *Mason v. Commonwealth*, 49 Va. App. 39, 48 (2006) (holding that the "unit of prosecution for possession of child pornography . . . corresponds to the number of individual items of sexually explicit visual material"). Thus, the statute authorizes multiple punishments for distinct acts prohibited by the statute.

"To adopt [Perry's] approach would mean that 'once a [defendant] has committed one particular sexual crime against a victim he may thereafter with impunity repeat his offense,' so long as he does not direct attention to another place on the victim's body, or significantly delay in between each offense." *Carter*, 16 Va. App. at 128 (second alteration in original) (quoting *People v. Harrison*, 768 P.2d 1078, 1088 (Cal. 1989)). A defendant "should . . . not be rewarded where, instead of taking advantage of an opportunity to walk away from the victim, he

voluntarily resumed his sexually assaultive behavior." *Id.* (alteration in original) (quoting

*People*, 768 P.2d at 1088).

Here, Perry committed three distinct acts that are prohibited by Code § 18.2-370(A).

Perry's convictions are consistent with the legislature's intention to create a discrete unit of

prosecution for each act prohibited by the statute. Accordingly, we affirm all of his indecent

liberties convictions.

B. *The trial court did not commit an abuse of discretion when it permitted the Commonwealth to recall J.S. for additional testimony.*

Perry argues that the trial court erred when it allowed the Commonwealth to recall J.S. as

a witness on the second day of trial. We see no error in the admission of J.S.'s additional

testimony.

"A trial court exercises discretion in deciding whether to permit the recall of witnesses

for further examination." *Avocet Dev. Corp. v. McLean Bank*, 234 Va. 658, 669 (1988). The

court's ruling "will not be disturbed on appeal absent an abuse of [that] discretion." *Blankenship*

*v. Commonwealth*, 69 Va. App. 692, 697 (2019) (quoting *Michels v. Commonwealth*, 47

Va. App. 461, 465 (2006)). "Only when reasonable jurists could not differ can we say an abuse

of discretion has occurred." *Id.* (quoting *Tynes v. Commonwealth*, 49 Va. App. 17, 21 (2006)).

Here, after J.S. testified on the first day of trial, the Commonwealth informed the court

that she was subject to being recalled. It specifically asked the court not to excuse her as a

witness. Contrary to Perry's assertions, we do not see how the trial court "ran afoul of [the]

latitude it is normally afforded." When the Commonwealth recalled J.S., her testimony

supplemented and clarified prior testimony. She did not simply reiterate her prior testimony.

Nothing in the record otherwise suggests an abuse of discretion. Accordingly, the trial court did

not err when it permitted the Commonwealth to recall J.S. for additional testimony.

C. *Perry did not properly preserve his argument that the evidence was insufficient to prove the element of force, threat, or intimidation required to sustain his aggravated sexual battery conviction.*

In his final assignment of error, Perry contends that the evidence was insufficient to sustain his aggravated sexual battery conviction. Specifically, he argues that the Commonwealth failed to prove the element of force, threat, or intimidation. We decline to consider this argument, however, because Perry failed to properly raise it below.

Under Rule 5A:18, "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." "Rule 5A:18 requires the accused to *specifically* raise a legal challenge to the sufficiency of the evidence in order to preserve that issue for appeal." *Dickerson v. Commonwealth*, 58 Va. App. 351, 357 (2011). "[A] challenge to the sufficiency of the Commonwealth's evidence is waived if not raised with some specificity in the trial court." *Mounce v. Commonwealth*, 4 Va. App. 433, 435 (1987). Put differently, "[a] general argument or an abstract reference to the law is not sufficient to preserve an issue." *Banks v. Commonwealth*, 67 Va. App. 273, 285 (2017) (alteration in original) (quoting *Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003)).

In his motion to strike, Perry argued that J.S.'s initial statement regarding the incident was inconsistent with her testimony at trial and asserted that those alleged inconsistencies prevented the Commonwealth from proving "any of the elements" of the offenses charged. On appeal, however, he contends that the Commonwealth's "evidence produced at trial" was insufficient to prove that Perry acted with the force, threat, or intimidation required to sustain his aggravated sexual battery conviction. These arguments are materially different in scope and substance. And "[m]aking one specific argument on an issue does not preserve a separate legal point on the same issue for review." *Banks*, 67 Va. App. at 285 (alteration in original) (quoting

*Edwards*, 41 Va. App. at 752). Accordingly, we conclude that Perry did not properly raise his argument regarding the force, threat, or intimidation prong before the trial court.

Without conceding that he did not raise the argument below, Perry asks us to invoke the ends of justice exception. "'The ends of justice exception is narrow and is to be used sparingly,' and applies only in the extraordinary situation where a miscarriage of justice has occurred." *Holt v. Commonwealth*, 66 Va. App. 199, 209 (2016) (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 220-21 (1997)). "[W]hen an appellant raises a sufficiency of the evidence argument for the first time on appeal, the standard is higher than whether the evidence was insufficient." *Id.* at 210 (alteration in original) (quoting *Brittle v. Commonwealth*, 54 Va. App. 505, 514 (2009)). "[A]n appellant must do more than show that the Commonwealth *failed* to prove an element or elements of the offense." *Id.* (alteration in original) (quoting *Redman*, 25 Va. App. at 221). Instead, the appellant must show that "the record contains affirmative evidence of innocence or lack of a criminal offense." *Id.* (quoting *Flanagan v. Commonwealth*, 58 Va. App. 681, 695 (2011)).

Here, Perry has failed to meet his burden to justify invoking the ends of justice exception. He merely asserts that we should invoke the exception "because an element of the offense is missing" and, thus, "it would be a grave injustice to uphold [his] conviction." His argument focuses on the lack of evidence, but "[l]ack of proof is not affirmative evidence to the contrary, which would warrant exercising the 'ends of justice' exception to Rule 5A:18." *Holt*, 66 Va. App. at 210-11 (quoting *Phan Le v. Commonwealth*, 65 Va. App. 66, 75-76 (2015)). In other words, Perry's "argument misses 'the distinction between lack of proof of an element and affirmative proof that the element did not occur.'" *Id.* at 210 (quoting *Phan Le*, 65 Va. App. at 75). Accordingly, we decline to apply the ends of justice exception to Rule 5A:18 and, therefore,

we do not consider Perry's argument that the evidence was insufficient to prove the element of force, threat, or intimidation required to sustain his aggravated sexual battery conviction.

### III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*